32  518
57  333

WILLIAM W. FLAGLER

*v.*

GEORGE W. BLUNT and others.

A creditor filed a bill alleging that an uncle of the defendant had, in carrying on a dairy farm in this state, contracted his debt; that the defendant claimed that his uncle had, two years before his death, given him the farm and all the utensils &c. thereon, the latter orally and without consideration; that the defendant was a non-resident and insolvent, and had sold all the personal property and threatened to remove the proceeds from the state; that the farm was encumbered to its full value; that no administrator had been appointed; that such creditor was without remedy at law; that the defendant was liable as an executor *de son tort;* and praying that a receiver might be appointed,

NOTE.—Under some circumstances an executor, *de son tort* may be pursued in equity. *Sharland* v. *Loosemore, 5 Hare 469; Hill* v. *Curtis, L. R. (1 Eq.) 90; Rayner* v. *Koehler, L. R. (14 Eq.) 262; Vickers* v. *Bell, 4 DeG. J. & S. 274; Cary* v. *Hills, L. R. (15 Eq.) 79; Coote* v. *Whittington, L. R. (16 Eq.) 534; Rowsell* v. *Morris, L. R. (17 Eq.) 20; Beardmore* v. *Gregory, 2 H. & M. 491; Penny* v. *Watts, 2 Phil. 149; Ambler* v. *Lindsay, L. R. (3 Ch. Div.) 198.* See, also, *Rogers* v. *Frank, 1 Y. & J. 409; Elworthy* v. *Sandford, 3 H. & C. 330; Newland* v. *Champion, 1 Ves. Sr. 106; Dozier* v. *Dozier, 1 Dev. & Bat. Eq. 96; Gentry* v. *Jones, 6 J. J. Marsh. 148, 154; Watts* v. *Gayle, 20 Ala. 817; Chamberlayne* v. *Temple, 2 Rand. 398; Hansford* v. *Elliott, 9 Leigh 79; Trippe* v. *Lowe, 2 Kelly (Ga.) 304; Pike* v. *State, 14 Ark. 403.*—REP.

Flagler *v.* Blunt.

and defendant's attorneys, in whose hands the funds had been put, restrained from paying them to him. On demurrer,—*Held,*

(1) That if the defendant is an executor *de son tort,* complainant must pursue him at law.

(2) That the circumstances connected with the alleged gift of the personal property to the defendant; that he had never been in possession or asserted any claim thereto until after the uncle's death, and the foregoing statements in the bill, justify this court in appointing a receiver, that the property may be held until an administrator be appointed, and directing that the attorneys pay over the proceeds of sale to him.

Bill for relief. On general demurrer.

*Mr. A. Mills,* for demurrants.

*Mr. T. Little,* for complainant.

THE CHANCELLOR.

The bill alleges, in substance, that George W. Blunt, uncle of the defendant Blunt, was for many years, and up to the time of his death, which occurred April 19th, 1878, in possession of a farm in the county of Morris, on which he, or others in his name (he residing in the city of New York), conducted agricultural operations, and had there in his possession the usual farming implements and utensils, and kept horses, cows &c., and carried on the dairy business, and that at the time of his death he was indebted to the complainant in the sum of $576.10, for feed sold by the latter to him for his live stock on the farm. It further states that, after Blunt's death, his nephew, the defendant Blunt, a resident of New York city, came to this state and claimed that, since 1874, he had been, as, indeed, he appeared to have been, the owner of the farm, and that he owned, also, all the personal property thereon, by gift made in or about 1876, by his uncle George W. Blunt (there never was any written evidence of the gift or transfer, however, and the defendant Blunt never had possession at any time prior to

Flagler *v.* Blunt.

his uncle's death); that he subsequently sold the personal property, realizing therefor about $1,500; that, after he sold the property, an ineffectual attempt on the part of the complainant and one or more others of the creditors of the deceased was made to recover from the nephew, by attachment, their debts contracted by the uncle, and that since the termination of the attachment proceedings, the proceeds of the sale of the personal property which was sold thereunder, have come into the hands of the attorneys of the defendant Blunt in that suit, who, at the time of the filing of the bill, held them to indemnify the sureties on his bond, given in the proceedings in attachment.

The bill states that the uncle owned no other property in this state than the personal property before mentioned; that no administration has been taken upon his estate in this state; that the defendant Blunt has, by his intermeddling with the property of his uncle, made himself executor *de son tort,* and so has become liable to pay the complainant's debt; that he is a man of little or no property, and at least has none in this state except the farm, which is encumbered by mortgage beyond the price for which it could be sold, and that he is about to remove the proceeds of the sale of the personal property out of this state.

The bill prays discovery; that the defendant Blunt may be enjoined from removing from this state the proceeds of sale before mentioned, and that his attorneys may be restrained from paying the money in their hands to him; that a receiver may be appointed; that the amount due the complainant from George W. Blunt, deceased, at the time of his death, may be ascertained, and that the defendant Blunt may be decreed to pay it out of the before-mentioned money, and that the complainant may have such other and further relief as to the court may seem meet.

All of the defendants have demurred. They insist that the suit cannot be maintained, because it must be viewed in one of two aspects, either as a suit to recover the complainant's debt from the defendant Blunt as executor *de son tort,*

Flagler *v.* Blunt.

from which point of view the complainant's remedy is at law; or as a suit to set aside the alleged sale to the defendant Blunt as a fraud on the complainant as a creditor of George W. Blunt, deceased, in which aspect the fact that the complainant has no judgment and execution is fatal to the suit. The attorneys (the bill is filed against them, also) insist that the bill cannot be maintained against them, for no fraud is charged against them, and the complainant is entitled to no discovery from them.

The complainant pursues the defendant Blunt as executor *de son tort*, and asks that all the proceeds of the sale may be paid to a receiver. They are more than enough to pay his debt. His remedy against Blunt for the payment· of his debt is, at law, to sue him as executor there. *Wms. on Ex'rs 267 ; Pleasants* v. *Glasscock, 1 Sm. & Marsh. 17*. He cannot call him to an account for the assets of the estate, unless a personal representative of the estate be a party. *1 Dan. Ch. Pr. 319 ; Creasor* v. *Robinson, 14 Beav. 589 ; Gregory* v. *Forrester, 1. Mc Cord Ch. 318 ; Farley* v. *Farley, Id. 506*. If satisfaction of his debt were accorded to him out of the proceeds of the sale, what disposition would be made of the balance of the assets ? Is it to be paid back to Blunt, who, in that case, must have been adjudged to have no legal or equitable title to it ?

There is another view, however, in which the bill is clearly sustainable, and that is as a bill for an injunction and an account and a receiver. The defendant Blunt is in possession, through a sale made by himself under a claim of ownership, of the proceeds of all the property of which his uncle died possessed in this state. His claim of ownership is based on his allegation that, by a merely oral gift, without consideration, his uncle transferred the property to him a year or two before his death. He admits that he had never, up to the time of his uncle's death, had any possession of the property, nor was there any delivery of it, nor had he even seen it, but it remained in the possession of his uncle. He is not only of no pecuniary responsibility, but is a non-

resident here, and is about to take the proceeds of the sale of the property out of this .state and away from the reach of the creditors of his uncle. No administration has been taken on the estate of his uncle, and there is no property in this state out of which the creditors can collect their claims if the proceeds of sale in dispute be taken away. There is no property on which to administer, but only the proceeds of the sale of property, and they are subject to his claim.

It is among the undoubted powers of this court to preserve the property of a decedent to those who may be entitled to it under such circumstances. If it had not such power, there would be a failure of justice. The property would be liable to be taken away out of the state, by any designing person, before administration could be obtained, and thus those entitled to the estate be defrauded. It must be within the power of this court to prevent so obvious and gross a wrong. The jurisdiction is established. *Mitf. Pl. 135; Wms. on Ex'rs 500; 2 Redf. on Wills 96; High on Inj.* § *828; Wood* v. *Hitchings, 2 Beav. 289.*

Judge Redfield lays down the rule thus: "Where the property belonging to the estate is in peril of loss, and there is no one appointed to represent the estate, the right of administration being in controversy and the probate court not having appointed an administrator *pendente lite*, a court of equity will appoint a receiver to arrest or prevent inevitable loss where the estate is of sufficient value and the amount of apprehended loss such as to justify the expense of a receiver. And it seems that it will make no difference whether the occasion demanding the appointment of a receiver arises before any one has been appointed to represent the estate, or during the pendency of a controversy to annul letters of probate or of administration." *Redf. on Wills 96.*

"The power of appointing receivers," says Mr. High, "is necessarily inherent in courts possessed of equitable jurisdiction, and may be invoked whenever there is an estate or fund in existence and no competent person entitled to hold

Flagler *v.* Blunt.

it, or the person entitled occupies the relation of a trustee and is misusing or misapplying the property.    *    *    * So, a receiver will be appointed for the protection of the fund, when the plaintiff has an equitable interest, and the defendant, having possession of the property, is wasting it or removing it beyond the jurisdiction of the court. The principal grounds upon which courts of equity grant their extraordinary aid by the appointment of receivers *pendente lite*, are that the person seeking the relief has shown at least a probable interest in the property, and that there is danger of its being lost unless a receiver is allowed, the element of danger being an important consideration in the case. And a remote or past danger will not suffice as a ground for the relief, but there must be a well-founded apprehension of immediate injury. The power of appointment is usually invoked either for the prevention of fraud, to save the subject of litigation from material injury, or to rescue it from threatened destruction. And, to warrant the interposition of a court of equity by the aid of a receiver, it is essential that the plaintiff should show, first, either a clear legal right in himself to the property in controversy, or that he has some lien upon it, or that it constitutes a special fund out of which he is entitled to satisfaction of his demand; and, secondly, it must appear that possession of the property was obtained by the defendant through fraud, or that the property itself, or the income from it, is in danger of loss from the neglect, waste, misconduct or insolvency of the defendant." *High on Receivers,* §§ *9, 11.*

It is laid down by Mr. Kerr, that a receiver of the assets of a decedent will be appointed in equity if it appears, from all the circumstances of the case, that there is no executor or administrator in existence, with the right or power to act as such, notwithstanding there is no ground laid for interference in respect of any improper conduct of the parties. *Kerr on Receivers 31.*

To protect the property, it was necessary in this case for the complainant to have recourse to equity, and the

attorneys were necessary parties in order that they might be restrained from paying out the money to their client. An administrator would be entitled, in equity, to recover (and the defendant Blunt to account to him accordingly therefor) the before-mentioned proceeds of sale. *Scoville* v. *Post, 3 Edw. 216.*

The injunction affords an opportunity for obtaining the appointment of a personal representative of the decedent in this state. The demurrer will be sustained except in this point of view, but leave will be given to amend the bill to conform to the conclusion reached in this opinion.